JOHN R. HALL *v.* GEORGE E. DICKEY and WIFE.

1. SLAVES: PAROL GIFT OF IN NORTH CAROLINA VOID: STATUTE OF LIMITATIONS.— A parol gift of a slave, by the law of North Carolina, is void and amounts in law to a mere bailment of the slave to the donee; and the Statute of Limitations will not commence running against an action for the recovery of the slave by the donor, until the donee sets up a claim of title adverse to the donor.

2. STATUTE OF LIMITATIONS: BAILOR BARRED WHEN POSSESSION ADVERSE.—A sale of a slave held by the donee under a parol gift made in North Carolina, is an assertion of title adverse to the donor, both as to the slave sold, and her issue which were born subsequent to the gift; and the Statute of Limitations will commence running from the date of the sale, whether the donor knew of it or not.

APPEAL from the District Chancery Court at Holly Springs, Hon. James F. Trotter, vice-chancellor.

It is only necessary to state in addition to the facts set out in the opinion of the court, that the bill charged as the ground of complainant's title, that the defendant received all of the slaves sued for and devised by the will of Joseph Woods, as the agent of complainant, and as guardians for her brothers and sisters. The answer denied this, as to the slave Mahala and her children, and alleged that Mahala was given to Mrs. Hall by said Joseph Woods, soon after her marriage in North Carolina, and the defendant claimed the children of Mahala, then in his possession, as his own property, and also Rebecca and her children. The vice-chancellor overruled the plea of the Statute of Limitations, and decreed that complainants were entitled to an undivided interest in Mahala's children, then in possession of defendant, and also in Rebecca and her children, and the two hundred dollars received by defendant in the exchange of said Mahala.

*Watson* and *Craft*, for appellant,

Argued in substance, 1. That it appeared by the answer and proof, Joseph Woods made a parol *gift* of the slave to Hall and wife, and that possession thus acquired and continued for three years, would vest the possessor with the title by operation of the Statute of Limitations. 4 Yerg. 507; 8 Ib. 145; Meigs, Dig. 427; 6

Humph. 75; 5 Ib. 347. That when there was an express gift it was different from a mere delivery of possession, which was presumed in law to be a mere bailment; and of this character were most of the cases cited by appellee's counsel. This distinction is expressly recognized by Judge Gaston, in the case of *Hill's Ex'ors* v. *Hughes,* 1 Dev. & Bat. 336, and by Judge Hall, in *Justice* v. *Cobb,* 1 Dev. R. 469, where it is said that if an express parol gift had been proven, three years' possession would have barred the recovery.

2. But whatever may be the rule, when the donee does not set up an adverse title, it cannot be doubted that the statute would commence running from the time he expressly denies the donor's title, and thus puts an end to the bailment. The sale of the slave by Hall was an assertion of title in the most unequivocal manner; and from that time the statute must run. And whether this is an assertion of adverse title so as to let in the Statute of Limitations, must be governed by the law of this State, and not by the law of North Carolina. 8 Peters, 368; 9 How. U. S. 403; 1 Caine's Ca. 402; 3 John. Ch. R. 218; 21 Eng. Com. L. 194; 17 Ala. 698; 11 Wheat. 371; 8 Porter, 95; 3 S. & M. 563; *Masters* v. *Dun,* 30 Miss. R. 264.

*Clapp* and *Strickland* for appellees.

Conceding that there was an express gift, yet no title was conveyed to the donee: a gift of that character amounts only to a bailment, revocable at any moment by the donor; and no length of possession can make the slave the property of the donee. *Darden* v. *Allen,* 1 Dev. 466; *Collin & Wife* v. *Poe,* 1 Dev. Eq. R. 55; *Davis* v. *Brooks,* 3 Murph. (N. C.) R. 133, 483; *Hill's Ex'ors* v. *Hughes,* 1 Dev. & Batt. 336; *Bennett* v. *Flowers,* Ib. 467; *Alston* v. *Hamblin,* 2 Ib. 115; *Martin* v. *Harbin,* 2 Ib. 504; *Bullock* v. *Bullock,* 2 Dev. Eq. R. 314; *Green* v. *Harris,* 3 Iredell, 210; *Weeks* v. *Weeks,* 5 Ib. 117.

FISHER, J., delivered the opinion of the court.

The complainants below filed this bill in the Vice-Chancery Court, at Holly Springs, to compel the defendant, John R. Hall, to account to them for their interest in certain slaves and money

bequeathed to Mrs. Dickey, by her grandfather, Joseph Woods, deceased, in the State of North Carolina; and which it is alleged the defendant received as the complainant's agent.

There appears to be no controversy as to four of the slaves, the answer containing a full admission as to these, as well as an offer to account with the complainants. But as to the other slaves, the answer must be regarded as responsive to the bill; and whether the defence set up can be regarded as sustained or not, the bill is still unsustained in this respect, and must, as to these slaves, be dismissed. The facts are briefly these: the defendant, about the year 1824, intermarried with Elizabeth Woods, a daughter of the testator, Joseph Woods, deceased. It appears that very soon after this marriage, the father gave to his daughter the slave Mahala, now in controversy; that the defendant under this gift, took possession of the slave, and continued to hold such possession in the State of North Carolina, until he left that State about the year 1840, when he removed, bringing with him the said slave, to the State of Mississippi. That about the year 1842, while residing in this State, he exchanged the slave Mahala and one of her children, for the slave Rebecca, and two hundred dollars; that he has not since owned, claimed or controlled the slave Mahala. It further appears that the gift by the father, in North Carolina, to his daughter, was by parol, and that such gifts were and are void under the laws of that State. It does not appear that the testator, until a short time before his death, in 1852, ever asserted any title or claim to the said slave after the gift to his daughter.

The defendant, under this state of facts, relies upon the Statute of Limitations, as a defence. It will at once be seen that the question for decision is, whether the testator had a title to the slave Mahala at the time of his death, which could then have been asserted and enforced against the defendant. It is said that the Supreme Court of North Carolina, in construing the statute of that State, requiring gifts of slaves to be in writing, have, on several occasions, held that the donee, under a parol gift, was the bailee of the donor, and that while this relation continued, the Statute of Limitations could not run in favor of the bailee, as his possession could not be considered as adverse to the title of the

donor.. But it is, nevertheless, equally well-settled by that court, even if the decisions relied on by counsel were intended to apply to parol gifts like the present, and not strictly to loans, that it is at any time within the power of the donee to put an end to the bailment, and that the statute will, from that moment, commence running in his favor; and that his possession, although it commenced under a void gift, may ripen into a perfect title. It would seem, from the very nature of the transaction itself, aside from the adjudications of the Supreme Court of North Carolina, that the vendee's possession was, from the very moment it commenced, adverse to that of the donor. But be this as it may, upon principle, both the rules of comity, and the respect which we entertain for the decisions of the tribunal whose peculiar province it was to construe the law in question, forbid that we should travel beyond the rules established by those decisions, if they appear to apply to the case under consideration.

Assuming then, that the bailment once existed, the inquiry must be, whether it was determined a sufficient length of time before the testator's death, to let in the Statute of Limitations as a defence to the defendant. This question is easily solved. As long as the donor's title was admitted, or recognized by the defendant, he must be treated as a bailee of the slave, and the statute would not run in his favor. On the contrary, the moment the title was denied, or acts done by the defendant which presupposed a title in himself, the statute would commence running, for the reason that he did not undertake, by the terms of the bailment, to be responsible for the safe-keeping of the property, but only to admit and to recognize the donor's title. This being the nature of the contract of bailment, it was of course violated the moment the defendant asserted an absolute title in himself, and dealt with the property as his own; and it is almost unnecessary, even to state that the Statute of Limitations begins to run from the breach of a contract. Suppose the donor had brought his action in 1852, not for the slave, but for the value, against the defendant, could it have been sustained over the plea of the Statute of Limitations? Most certainly not; for the obvious reason, that to sustain the action, it would have .been necessary, under any view of the law,

to show a breach of the contract of bailment; and in making such showing, the time when the breach occurred being shown, would have settled the question, as to the validity of the defence.   A few words, therefore, as to the facts, will suffice to show that the case falls completely within the operation of this rule.   The exchange which the defendant made of the slave in 1842, for another slave, aside from all other considerations, was an unequivocal assertion of a title in himself, and must be regarded as a breach of any actual or implied contract, then existing between the parties, as to the bailment of the slave.   The fact that the donor remained ignorant of such transaction can make no difference, as the donee had not engaged to hold the property for the donor, but merely to recognize his title to the same; and it was his business, as in any other case, to know when this contract was violated.   We do not, of course, intend to be understood that this would be the rule, as to bailments generally, but to a bailment under this statute.   The transaction itself must determine the character of the bailment. The donor intended to confer upon the donee an absolute control over the slave in every respect, except as to the title, which was the only thing about which the law implied a contract, between the parties.

From our view of the case, we are of opinion that so much of the decree as gives to the complainants the slaves claimed by the defendant, must be reversed, and the bill in this respect dismissed. The appellees to be taxed with costs of this court.